IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

WILLIAM F. KENNEDY                                                                      PLAINTIFF

VERSUS                                                         CIVIL ACTION NO. A2401-2020-474

VERIZON BUSINESS NETWORK SERVICES, LLC                                  DEFENDANT

## COMPLAINT

COMES NOW the Plaintiff, William F. Kennedy, by and through his counsel of record, Heidelberg Steinberger, P.A., and files this his Complaint against the Defendant, Verizon Business Network Services, LLC, and in support thereof, would show unto the Court as follows:

## PARTIES

1. Plaintiff William F. Kennedy is an adult resident citizen of the First Judicial District of Harrison County, Mississippi, who may be contacted by undersigned counsel.

2. Defendant, Verizon Business Network Services, LLC, (herein "Verizon") is a corporation formed under the laws of Delaware, domiciled in Delaware, and which regularly conducts the business of telecommunications in Harrison County, Mississippi, who may be served with process upon its registered agent C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this court because the actions giving rise to this suit occurred in Harrison County, Mississippi.

4. Venue is proper in this Court pursuant to Miss. Code Ann. § 11-11-3.

EXHIBIT 1


FILED OCT 08 2020 CONNIE LADNER CIRCUIT CLERK D.C.

## FACTUAL ALLEGATIONS

5. Mr. Kennedy began his employment with Verizon in September 2013 as a senior cybersecurity consultant.

6. In 2019, Mr. Kennedy was assigned by Verizon to work on a contract with Manpower Group.

7. On or about April 2020, Mr. Kennedy was directed by his supervisor, Fernando Gutierrez to work on a contract with DXC Technologies while at the same time working on the Manpower Group project.

8. Upon information and belief, the contract with Manpower Group was a flat fee plus, meaning, Manpower Group allowed for a certain amount of hours to be billed each week on its project, but once the project exceeded the budgeted hours, it would revert to a time and expense fee billing scheme.

9. As a result of working on the two projects, Mr. Kennedy was working well over 80 hours per week.

10. Verizon grossly underbid the DXC Technologies project. On April 13, 2020, Mr. Kennedy was directed by Sharon Smith, in consultation with Fernando Gutierrez, to bill his extra hours to the Manpower Group project.

11. Both Mr. Kennedy and his colleagues working on the DXC Technologies project considered this action to be a wilful and deliberate attempt to defraud Manpower Group.

12. Also during this time period, Mr. Kennedy's colleagues were directed to fraudulently mischarge their hours to other cost codes. Mr. Kennedy continued to weekly

question the direction of charging hours with the entire DXC Technologies project management team as well as all other Verizon staff working on the DXC Technologies project.

13. Mr. Kennedy was informed that the DXC Technologies project engagement manager and her senior manager discussed in writing how much longer they could get away with Mr. Kennedy billing his DXC Technologies hours to Manpower Group. Mr. Kennedy believed this pattern of behavior represented a continuation of the initial direction to defraud Manpower Group.

14. When he first began working for Verizon, Mr. Kennedy was trained that working on one contract and charging another was fraud and that the practice placed the reputation, profit and business growth of Verizon at risk. This training was reiterated in July 2020.

15. On or about July 7, 2020, Mr. Kennedy reported the illegal billing practices to Greg Harris. Later that day, Jeff Cornelius asked Samuel Junkin and Fernando Gutierrez if the hours should be adjusted to appropriately reflect the time billed on each project.

16. On July 10, 2020, after the DXC Technologies project had been delivered and after the illegal billing had been reported, Michelle Wire instructed Mr. Kennedy and his coworkers Jeff Cornelius and Luke Owen to review their hours and make adjustments if they were charged elsewhere. Ms. Wire questioned Mr. Kennedy's hours, calling his integrity into question.

17. After he reported the illegal activity, Mr. Kennedy suffered a hostile work environment retaliation for reporting the illegal activity. Mr. Kennedy was given no choice but to continue working in the hostile environment and engage in the illegal activity or quit his job.

18. On July 13, 2020, Mr. Kennedy submitted his resignation to Fernando Gutierrez and requested an effective date of July 24, 2020 in order to allow Mr. Kennedy to finalize the Manpower Group Archer Risk Exception Application project. Also on July 13, 2020, Mr. Kennedy reported the retaliation to Greg Harris.

19. Mr. Kennedy's complaint was referred to compliance attorney Amy Hammer. Subsequently, Mr. Kennedy was called into a meeting with Amy Hammer who harassed and interrogated Mr. Kennedy in an intimidating manner in retaliation for reporting the fraudulent and illegal billing practices of Verizon and filing the complaint of retaliation.

20. Mr. Kennedy's manager Fernando Gutierrez denied his request for an effective last day of July 24, 2020. Instead, he was told he would have to work until July 31, 2020 or August 7, 2020 and was given assignments to work post July 24, 2020. Mr. Kennedy worked until July 31, 2020.

21. During his employment, Mr. Kennedy was never reprimanded. His evaluations were always good.

### COUNT I - INFLICTION OF EMOTIONAL DISTRESS

22. Mr. Kennedy incorporates by reference Paragraphs 1 through 21 as if they had been fully restated herein.

23. Verizon is liable to Mr. Kennedy for the torts of intentional and negligent infliction of mental and emotional distress.

24. Verizon created and fostered a hostile and retaliatory work environment for Mr. Kennedy which caused substantial stress, mental anxiety and emotional distress.

25. Verizon intentionally and negligently inflicted emotional distress upon Mr. Kennedy by operating its business in a fashion which violated the criminal laws of the United States and the State of Mississippi.

26. Verizon intentionally inflicted emotional distress upon Mr. Kennedy by creating and fostering a hostile and retaliatory work environment for Mr. Kennedy because Mr. Kennedy reported and refused to participated in the illegal and criminal activity which Verizon required Mr. Kennedy to participate.

### COUNT II - CONSTRUCTIVE DISCHARGE

27. Mr. Kennedy incorporates by reference Paragraphs 1 through 26 as if they had been fully restated herein.

28. Verizon is liable to Mr. Kennedy for the tort of constructive discharge.

29. By requiring Mr. Kennedy to engage in illegal and criminal activity, Mr. Kennedy had no choice but to resign his employment.

30. Mr. Kennedy had no choice but to resign his employment to prevent himself from being required to engage in further illegal and criminal activity of Verizon.

31. By creating and fostering a hostile and retaliatory work environment for Mr. Kennedy, he had no choice but to resign his employment.

32. The harassment, retaliation and continued fraudulent activity made it impossible for Mr. Kennedy to continue in his employment, compelling his resignation.

### COUNT III - DISCHARGE IN VIOLATION OF PUBLIC POLICY

33. Mr. Kennedy incorporates by reference Paragraphs 1 through 32 as if they had been fully restated herein.

34. Verizon is liable to Mr. Kennedy for discharge in violation of the public policy of the State of Mississippi pursuant to *McArn v. Allied Bruce Terminix Co. Inc.*, 626 So.2d 603 (Miss. 1993) for constructively discharging Mr. Kennedy because:

    a. Mr. Kennedy reported illegal and criminal activity of Verizon; and

    b. Mr. Kennedy refused to participate in the illegal and criminal conduct.

## DAMAGES

35. Mr. Kennedy incorporates by reference Paragraphs 1 through 34 as if they had been fully restated herein.

36. As a direct and proximate result of Verizon's misconduct, Mr. Kennedy has suffered damages, including, but not limited to:

    a. Past and future lost income and benefits;
    b. Past and future emotional distress;
    c. Past and future humiliation, embarrassment and inconvenience;
    d. Past and future mental anxiety and stress;
    e. Past and future damages to reputation; and
    f. Attorney's fees and costs.

## REQUEST FOR RELIEF

37. Mr. Kennedy requests actual, special, compensatory and punitive damages in an amount to be determined by a jury and for reasonable attorney's fees and costs.

Respectfully submitted, this the 5 day of October, 2020.

WILLIAM F. KENNEDY

BY: _____
STACIE E. ZORN (MSB NO. 101225)
Heidelberg Steinberger, P.A.
711 Delmas Avenue
Pascagoula, MS 39567
Telephone: (228) 762-8021
Facsimile: (228) 762-7589
Email: szorn@hs-lawfirm.com